## IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

RICHARD WAYNE REAGAN,        )
                     Petitioner,   )
v.                           )      Case No. CIV-04-1690-T
                           )
WARDEN TIM O'DELL,          )
                   Respondent.  )

## <u>REPORT AND RECOMMENDATION</u>

Petitioner, a state prisoner appearing through counsel, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Petition be denied.

### <u>Relevant Case History</u>

Petitioner was convicted of First Degree Manslaughter after a jury trial in the District Court of Oklahoma County, Oklahoma, Case No. CF-99-6073. He was sentenced to a term of forty years imprisonment.

Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA). The OCCA affirmed Petitioner's conviction by Summary Opinion filed April 7, 2004. *See* Summary Opinion, Case No. F-2003-40 (Okla. Crim. App. Apr. 7, 2004) (Summary Opinion), Attachment A to Plaintiff's Brief in Support of Habeas Corpus Relief [Doc. #7] (Plaintiff's Brief).

Petitioner then sought sentence modification in the trial court.  On July 23, 2004, Judge Virgil C. Black granted the petition and suspended the last twenty years of the forty-year sentence.  Petition at 2.

In this habeas action, Petitioner raises four grounds for relief, all of which were raised on direct appeal:

(1)     the State presented insufficient evidence to support Petitioner's conviction;

(2)     the admission of unreliable and prejudicial expert testimony deprived Petitioner of due process;

(3)     Petitioner's due process right to a fair trial was denied when the trial court received information from the jury regarding its concern for courtroom security, failed to timely notify defense counsel that the communication occurred, and failed to interview the jurors as to their concerns; and

(4)     prosecutorial misconduct and trial errors, when considered in a cumulative fashion, warrant a new trial or a modification of Petitioner's sentence.

**Standard of Review**

Petitioner's habeas action is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, a petitioner is not entitled to habeas corpus relief if his claim has been adjudicated on the merits by the highest state court unless the state court's adjudication of the claim resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or resulted in a decision that was

2

"based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1) & 2254(d)(2). In conducting this inquiry, the factual findings of the state court are presumed correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## Evidence at Trial

On Friday October 29, 1999, an off-duty policeman called the Will Rogers Division of the Oklahoma City Police Department requesting that officers come to an address on North Classen in Oklahoma City, Oklahoma, where he had found a body in an alleyway. Relevant State Court Records Ex. 6, Transcript of Trial Proceedings, Case No. CF-99-6073 Volume I at 79-80 (TR I at ___).  Bill Ricketts, a detective with the Oklahoma City Police Department, investigated the circumstances surrounding the death and testified at Petitioner's trial.  The dead man was identified as Roy Pate.  TR I at 124-125.  During the course of his investigation, Detective Ricketts discovered that Mr. Pate, the Petitioner, and others had worked together on jobs secured through Labor Ready, a temporary labor service in the area. TR I at 124.  Detective Ricketts learned that Mr. Pate had been traveling from state to state with two other men, a Mr. Brown and a Mr. Wheatley, and living in an old Chevrolet pickup truck which they parked behind the Labor Ready office.  TR I at 126-127.  Detective Ricketts testified that the trio obviously all had drinking problems and that they existed by doing temporary work as they traveled from state to state.  TR I at 127.

Detective Ricketts summarized what he had discovered about Mr. Pate's activities during the three days before his death.  According to Detective Ricketts, Mr. Pate was last

seen alive and in good condition late in the evening on Wednesday, October 27, 1999. That evening at about 6:30 p.m., Mr. Pate and his traveling companions along with two other men, Wade Johnson and Leonard Willis, gathered behind the Labor Ready office and began drinking.[1] Wade Johnson left first. Mr. Wheatley and Mr. Brown apparently told Detective Ricketts that Mr. Pate said he was going to sleep in a shack because he was tired of the cramped quarters of the truck. TR I at 128-129, 131.[2] Detective Ricketts reported that "two other individuals" saw Mr. Pate on Thursday morning inside the shack. These individuals apparently told Detective Ricketts that Mr. Pate had been badly beaten, but that he refused medical aid and told them that he had fallen. TR I at 132. According to the testimony of Leonard Willis at the Preliminary Hearing, it was he and Wade Johnson who had seen Mr. Pate on Thursday morning. PH at 49-53.

Petitioner testified that he had hitchhiked his way from California to Oklahoma, arriving in Oklahoma City on or about October 17, 1999. TR II at 315. Petitioner sought work at Labor Ready. After his first day of work, he met a person from the area who showed Plaintiff the abandoned shed located about one block from the Labor Ready office. The shed had a couch, a bathroom, working electricity and a space heater. TR II at 323-324.

---

[1]Leonard Willis testified at the preliminary hearing held on April 21, 2000. *See* Preliminary Hearing Transcript, Case No. CF-99-6073 (PH at ___). Mr. Willis, who would have been called to testify by the defense, could not be located and was unavailable to testify at the trial. His testimony at the Preliminary Hearing was read into the record at trial. *See* TR II at 311-312.

[2]The shack or shed was in the alley where Mr. Pate later died. Oklahoma City police officers found Petitioner in the shack shortly after they discovered Mr. Pate's body. TR II at 210.

Petitioner met Mr. Pate on Monday, October 25, 1999.  Both men were working for Labor Ready painting curb stones at the Montgomery Ward Automotive Center.  TR II at 321.  The following Wednesday, Mr. Pate told Petitioner about his sleeping arrangement in the pickup truck, and Petitioner invited Mr. Pate to sleep in the shed.  TR. II at 324-325.  That night, Mr. Pate joined Petitioner in the shed for the night.  Petitioner testified that on Wednesday night, Mr. Pate was drunk and had a scratch on his face but was not bloody.  TR II at 326.  Mr. Pate was, however, mumbling and cursing and seemed upset about something.  Petitioner denied having been in a fight with Mr. Pate.  TR II at 328.

Petitioner testified that he left the shed Thursday morning, October 28, 1999, intending to go to work.  Instead, he bought a beer and drank most of that day.  TR II at 326.  When he left, Mr. Pate was inside the shed.  TR II at 327.  Petitioner returned to the shed between 2:00 and 4:00 p.m. Thursday afternoon.  TR II at 327, 356.  He was drunk.  He found Mr. Pate lying on his side in the alley near the shed.  Mr. Pate's face was swollen, he had blood in his mustache, and his eyes were black.  TR II at 329.   Petitioner asked Mr. Pate what had happened, but he could not understand Mr. Pate's response.  Petitioner testified that he bent over and grabbed Mr. Pate, intending to pick him up and put him inside the shed.  He was unable to move Mr. Pate.  Mr. Pate fell against Petitioner's chest and then fell away.  Petitioner put a pillow under Mr. Pate's head and covered him with a sleeping bag.  TR II at 330-331.  Petitioner then spent the night in the shed.  At 6:30 a.m. the next morning, Petitioner awoke, looked out the window of the shed, and saw a man in a police t-shirt leaning over Mr. Pate.  TR II at 332.

5

When Petitioner had first come to Oklahoma City, he worked several days doing landscaping jobs for Michael Williams, a furniture salesman who met Petitioner at the Jesus House or a nearby convenience store.  TR II at 316, 191-192.  Mr. Williams testified that toward the end of October 1999, Petitioner had called him and asked him to come to the 7-Eleven convenience store at 31st Street and Classen.  TR II at 194.  Mr. Williams stated that he met Petitioner, who was drinking from an open container of beer, in front of the 7-Eleven store at about 6:00 p.m.  Williams testified that Petitioner said, "Last night somebody tried to rob me and I beat him up and I beat him up pretty bad."  TR II at 195.  Mr. Williams testified that Petitioner had a little bit of blood on his hands.  *Id.*  Mr. Williams further testified that Petitioner said the man was "out back" and that he had told the man to leave, but the man would not leave or say anything.  TR II at 196.  On cross-examination, Mr. Williams admitted that he had previously taken Petitioner to his home and had socialized with Petitioner and others.  Tr. II at 199-201.

Petitioner's version of the meeting at the 7-Eleven store was different.  Petitioner testified that Mr. Williams had made two sexual advances toward him when he was at Mr. Williams' home.  TR II at 319.  He further testified that Mr. Williams had never paid him all the money for the landscaping jobs.  Petitioner stated that he called Mr. Williams to get the money Mr. Williams owed him.  He testified that Mr. Williams gave him some of the money.  TR II at 320.  Petitioner stated that he told Mr. Williams about Mr. Pate, thinking that Mr. Williams would know what to do about an injured homeless person.  TR II at 363.  Petitioner

denied that he told Mr. Williams that he, Petitioner, had been in a fight, that someone had tried to rob him, or that he had beaten someone.  Tr. II at 321, 363.

Dr. Chai S. Choi, a forensic pathologist from the Office of the Chief Medical Examiner for the State of Oklahoma, testified that Mr. Pate died of multiple injuries to his head and chest caused by blunt force of a violent nature.  TR  II at 258, 264-265.  On cross-examination, Dr. Choi stated that she could not tell whether Mr. Pate had sustained his head injuries by falling or by being beaten or by combination of the two.  TR II at 266-267.

Elaine Taylor, a serologist who worked for the City of Oklahoma City, testified that she had tested some blood samples retrieved from the area where Mr. Pate had died.  TR II at 222-244.  She was unable to obtain an "enzyme profile" from Mr. Pate's blood.  TR II at 226.  Ms. Taylor also tested the blood on some napkins or tissues found at the scene and determined that the blood was from Mr. Willis.  TR II at 238-239.[3]

Melissa Keith, another forensic scientist, testified concerning some DNA testing done for this case.  TR II at 245-257.  Ms. Keith confirmed that the blood on the tissues or napkins found at the scene was consistent with that of Leonard Willis.  Tr. II at 251-252.  She further testified that blood found on Petitioner's t-shirt was that of Mr. Pate.  TR II at 252.  She did not test any of the blood found in the shed.  Tr II at 256.

_____

[3]When Mr. Willis testified at the preliminary hearing, no one knew that it was Mr. Willis's blood on the napkins or tissues found at the scene of Mr. Pate's death.  Mr. Willis was not asked about the napkins and did not testify about having bled at the scene.  Because Mr. Willis was unavailable to testify at the trial, no explanation was given for the presence of his blood at the scene.

Tom Bevel, a retired Oklahoma City Police officer, testified as an expert witness on blood stains and spatter.  TR II at 271-307.  Mr. Bevel testified that the blood on Petitioner's t-shirt was partially transfer blood, partially spatter, and partially expectorate blood from the mouth.  TR II at 286-290.  He concluded that the person wearing the bloody t-shirt would have been standing approximately 2.5 feet from the victim when the expectorate blood stained the t-shirt and no further than 4 feet from the victim when the blood spatter stained the t-shirt.  TR II at 291.  Mr. Bevel admitted on cross-examination that in arriving at his opinions, he assumed all the blood at the scene and in the shed belonged to Mr. Pate.  TR II at 297.  Based on this assumption, Mr. Bevel concluded that someone began beating Mr. Pate in the southwest corner of the shed and that Mr. Pate then went out the window of the shed on his own or with help.  TR II 280-283.

**Ground One – Sufficiency of the Evidence**

In Ground One, Petitioner claims the evidence was insufficient to support his conviction.  In its Summary Opinion, the OCCA stated, "As to Proposition 1, we find the evidence, albeit largely circumstantial, was sufficient for a rational juror to conclude, beyond a reasonable doubt, that Appellant killed the victim in a heat of passion."  Summary Opinion at 2, Relevant State Court Records [Doc. #14] Exhibit 4.

In determining the sufficiency of the evidence on habeas review,  this Court must consider the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Under this standard, judicial review of Petitioner's challenge to the sufficiency of the evidence presented at trial "does not focus on whether the trier of fact made the correct

guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996)(quoting *Jackson*). Both direct and circumstantial evidence are considered in determining whether evidence is sufficient to support a conviction. *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998). In applying this standard, the Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer*, 74 F. 3d at 1013 (*quoting Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

Although the OCCA did not cite *Jackson*, the standard under which it reviewed this claim is the same as the standard set forth in *Jackson*. Because the OCCA adjudicated this claim on the merits, review of Petitioner's claim is subject to deference as defined by the AEDPA, 28 U.S.C. § 2254(d). The Tenth Circuit has not squarely decided whether sufficiency of the evidence claims are questions of law or fact for purposes of the AEDPA. 28 U.S.C. § 2254(d)(1)-(2). If sufficiency of the evidence is treated as a legal claim under § 2254(d)(1), the court must determine whether the OCCA unreasonably applied the standard from *Jackson*. If sufficiency of the evidence is treated as a factual finding under § 2254(d)(2), the court must analyze whether the OCCA's decision was an unreasonable determination of the facts. *See Webber v. Scott*, 390 F.3d 1169, 1178 (10th Cir. 2004). In

accord with Tenth Circuit precedent, it is not necessary to decide which standard applies here because Petitioner's claim fails under either standard. *Id.* (*citing Dockins v. Hines*, 374 F.3d 935, 939 (10th Cir. 2004)).

Reviewing the evidence in the light most favorable to the prosecution, a rational fact finder could have found the elements of First Degree Manslaughter beyond a reasonable doubt.  To be convicted of First Degree Manslaughter as charged against Petitioner, Oklahoma law requires the State to prove beyond a reasonable doubt that the defendant (1) committed homicide, (2) without a design to effect death, (3) in a heat of passion, (4) in a cruel and unusual manner, or by means of a dangerous weapon; (5) without circumstances constituting excusable or justifiable homicide.  *See* Okla. Stat. tit. 21 § 711(2).  Petitioner contends the State failed to prove beyond a reasonable doubt that Petitioner was "in the heat of passion" at the time this crime was committed.  Petitioner's Brief at 12.  Petitioner further challenges the State's evidence as to whether he committed homicide.  Petitioner states that the evidence was insufficient to prove that his actions caused Mr. Pate's death.  Petitioner's Brief at 16.

The circumstantial evidence adduced at the trial was not overwhelming and could be interpreted in more than one way.  Nevertheless, based on Petitioner's proximity to the scene of the crime, the testimony of Mr. Williams regarding Petitioner's admissions, Petitioner's failure to secure help for Mr. Pate, and the evidence of Mr. Pate's bloodstain and blood spatter on Petitioner's clothing,  a rational trier of fact could have concluded that Petitioner was the person who had beaten Mr. Pate.  That evidence, along with the evidence regarding

the severity of Mr. Pate's multiple wounds, provided a rational basis for the jury to conclude that Petitioner had acted in the heat of passion and had caused Mr. Pate's death.

Applying the deference required under the AEDPA, the OCCA's determination regarding the sufficiency of the evidence is neither contrary to, nor an unreasonable application of *Jackson*, nor is it an unreasonable determination of the facts in light of the evidence presented.  Petitioner is not entitled to habeas relief based on Ground One.

**Ground Two – Expert Testimony**

Petitioner challenges the admission of the testimony of Tom Bevel who testified as to his opinion on how Mr. Pate was killed.  He also challenges admission of the testimony of Detective Ricketts regarding Mr. Pate's injuries.

An error in the admission of evidence is a matter of state law not ordinarily remediable on habeas review.  When no particular constitutional guarantees are implicated, an evidentiary objection is cognizable in a federal habeas case only if the alleged error "was so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process."  *Revilla v. Gibson*, 283 F.3d 1203, 1212 (10th Cir. 2002) (quotation omitted; alteration in original).

Petitioner challenges admission of the expert testimony of Mr. Bevel contending that "[b]ecause Leonard Willis' blood was found on several napkins and on the rubber hose found in the alley just outside the shed, the assumption that the entirety of the blood in the shed belonged to Roy Pate is unsupported and invalidates all of Bevel's testimony."  Petitioner's Brief at 21.  Petitioner states that the trial court should have held a hearing before allowing

Mr. Bevel's testimony and should have made "a detailed reliability determination on the record to avoid a finding of abuse of discretion on appeal." Petitioner's Brief at 21-22.

The OCCA considered the merits of this claim and rejected it.

[W]e find no error in the admission of expert testimony on blood-spatter analysis for three reasons. First, no special admissibility hearing was required, as we have previously found such methodology to be reliable. Second, Appellant waived any complaint about the reliability *per se* of blood-spatter analysis by not objecting on those grounds at trial. Third, the fact that some of the State's Expert's conclusions relied on assumptions about the source of certain bloodstains does not invalidate his methodology. The expert's assumptions, and the consequent limitations on his conclusions, were made clear to the jury.

Summary Opinion at 2 (internal citations omitted). Because Mr. Bevel's assumptions were made clear to the jury on cross-examination, the jury had information necessary for a fair determination as to the weight to afford his testimony. *See e.g.*, Tr. II at 297. Further, in closing argument defense counsel reminded the jury that the napkins inside the shed were not tested. Tr. III at 392. In sum, the admission of Mr. Bevel's testimony did not deprive Petitioner of a fair trial. The OCCA's adjudication of this issue was reasonable and provides no basis for federal habeas relief.

Petitioner also challenges admission of some of the testimony of Detective Ricketts. Petitioner states that Detective Ricketts was not qualified to testify that Mr. Pate had "obviously been beaten," that the injuries could not have been caused by simply falling down, that Mr. Pate sustained injuries that would have rendered him incapable of getting out of the shed on his own, and that Mr. Pate would have been in a great deal of pain. Petitioner's Brief at 23-24; *see also* TR I at 109, 118, 134-135. Petitioner also challenges

Detective Rickett's testimony about blood spatter at the scene.  Petitioner's Brief at 24; *see also* TR I at 112, 117.  The OCCA rejected this claim on the merits as well.

> We find the witness's lay conclusions were rationally based on his perceptions at the crime scene and his experience as a homicide detective, that these observations could aid the jury in drawing its conclusions about the evidence, that they were generally consistent with expert testimony from other witnesses.

*Id.* at 3.  This testimony was properly admitted under Oklahoma law.  Its admission was not grossly prejudicial and did not violate Petitioner's due process rights.  Petitioner is not entitled to habeas relief on Ground Two.[4]


## Ground Three – Trial Court's Failure to Disclose the Jury's Safety Concerns

Petitioner states that he was denied a fair trial because when the trial judge received information from the jury regarding concern for courtroom security, he failed to timely

---

[4]Petitioner states that, should this Court find that this issue was not properly preserved through objection, this Court should analyze the issue as one of ineffective assistance of counsel. Petitioner's Brief at 25.  Petitioner has not raised ineffective assistance of counsel before the state courts, however, and therefore this claim is not exhausted.  Nevertheless, this Court can deny a habeas petition on the merits notwithstanding the failure of the applicant to exhaust his state remedies.  *See* 28 U.S.C. § 2254(b)(2).  To the extent that Petitioner now raises an ineffective assistance of counsel claim, such claim should be denied on the merits.  *See Strickland v. Washington*, 466 U.S. 668, 687-694 (1984) (counsel's performance is deficient if the representation falls below an objective standard of reasonableness; a petitioner is prejudiced by deficient counsel if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.).  Because the evidence was properly admitted under Oklahoma law, Petitioner's counsel was not ineffective in failing to object to its admission.  *See Parker v. Scott*, 394 F.3d 1302, 1321-1322 (10th Cir. 2005) (counsel not ineffective in failing to object to introduction of evidence when such evidence is allowed under state law); *see also Moore v. Reynolds*, 153 F.3d 1086, 1106-1107 (10th Cir. 1998) (appellate counsel not ineffective in failing to challenge admission of allegedly prejudicial hearsay statements when statements were properly admitted under Oklahoma law as state-of-mind exception to hearsay rule).

inform defense counsel about the communication and failed to interview the jurors as to their

concerns.[5]  Petitioner states that this communication from the juror(s) could indicate that the

jury or one of its members might not have been impartial and unbiased.  Petitioner's Brief

at 29-30.  The OCCA reviewed this issue for plain error and found none.[6]

> The record shows the communication was made early in the proceedings,
> before the jury began its deliberations; thus, there is no presumption of
> prejudice.  Appellant fails to demonstrate how he was harmed by the trial
> court's response.

Summary Opinion at 3 (citations omitted).

It is true that any unauthorized communication with a juror while the jury is

deliberating is presumed prejudicial.  *See Remmer v. United States*, 347 U.S. 227, 228

(1954).  The presumption does not apply here, however, because the jury was not

deliberating at the time of the communication.  Moreover, the question itself is not

necessarily indicative of bias.  Because the decision of the OCCA is neither contrary to, nor

an unreasonable application of federal law, nor is it an unreasonable determination of the

facts in light of the evidence presented, Petitioner should not be granted habeas relief on this

ground.

---

[5]Defense counsel first raised this issue during sentencing. *See* Transcript of Sentencing, Case No. CF 99-6073 (Dec. 20, 2002) (TR S at ____).  The judge stated that, as he understood it, "They asked the court reporter maybe how come he's not in handcuffs and I think we told them he's on bond?"  TR S at 4.

[6]The OCCA reviewed for plain error because counsel did not make a record of the communication until sentencing.

14

## Ground Four – Prosecutorial Misconduct and Cumulative Error

In his final claim of error, Petitioner contends that prosecutorial misconduct, considered cumulatively with other trial errors, warrants a new trial or further modification of Petitioner's sentence.  Petitioner states that the Prosecutor changed theories of the case in his closing argument rebuttal and improperly attempted to evoke sympathy for the victim.  Specifically, Petitioner objects to the following comments made by the Prosecutor regarding why the victim was killed:

> It finally came to me why this happened.  It was his home and he was defending his home.  There was a man at night crawling through the window of what he considered his home and he wouldn't leave.  He was drunk and so was he and this man wouldn't leave.

> So he picked up the object that he had next to him and, by God, he was going to leave.  That was the motive.  How do you think he got out the window?  I don't know.  Why do you think he got out the window?  I submit to you he had some help because that's the whole purpose of all of this.  That was the reason for this killing.  To make him leave.

Petitioner's Brief at 34; TR III at 413.  And Petitioner claims that the following comment improperly evoked sympathy for the victim:

> It is my job as an Assistant District Attorney in cases like this to get up and be the last words to speak for the dead.  And that is a responsibility that you can't even imagine.

Petitioner's Brief at 35; TR III at 410.

The OCCA rejected Petitioner's claim of error, reasoning as follows:

> [T]he prosecutor's comments in closing argument were not so egregious as to have denied Appellant a fair trial.  The prosecutor's comment as to why the victim might have been killed were not contrary to the evidence as to how the victim was killed.  The prosecutor's comment evoking some sympathy for the

victim may not have been appropriate, but we cannot say it amounted to plain
error in the absence of an objection.

Summary Opinion at 3-4 (citations omitted).

Federal habeas relief is appropriate for prosecutorial misconduct in opening
statements and closing arguments only when "there was a violation of the criminal
defendant's federal constitutional rights which so infected the trial with unfairness as to make
the resulting conviction a denial of due process." *Fero v. Kerby*, 39 F.3d 1462, 1473 (10th
Cir. 1994 ) (*citing Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  When a habeas
petitioner invokes "a specific constitutional right (rather than the general due process right
to a fair trial), a valid habeas corpus claim may be established without proof that the entire
trial was rendered fundamentally unfair." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002)
( citation omitted).  Here, however, Petitioner relies on his "fundamental right to a fair trial,"
rather than a specific constitutional right.  *See* Petitioner's Brief at 35.   To determine
whether the prosecutorial misconduct rendered the trial fundamentally unfair, "'[the court]
consider[s] the totality of the circumstances, evaluating the prosecutor's conduct in the
context of the whole trial.'"  *Smallwood v. Gibson*, 191 F.3d 1257, 1276 (10th Cir. 1999)
(citation omitted).  In this case, an evaluation of the Prosecutor's two challenged comments
in the context of the entire trial leads to the conclusion that the comments did not render
Petitioner's trial fundamentally unfair.

First, as Respondent correctly notes, Petitioner's claim that he was deprived of an
opportunity to address a "last minute" change in the prosecution's theory is not supported by

16

the record.  The Prosecutor developed the theory that Petitioner viewed the shed as his safe

harbor through cross-examination of Petitioner (Tr. II at 346-347), and the Prosecutor ended

his initial closing argument to the jury with a statement consistent with the theory reiterated

on rebuttal:

> When a drunken Mr. Pate crawled through that window and invaded
> [Petitioner's] safe harbor, his safe place, he came unglued.  He lost his cool
> and beat Mr. Pate to death.

Tr. III at 386.  Defendant's counsel pointedly refuted the prosecution theory in his own

closing argument:

> Now, [the prosecutor] grabs the stick and says, you invaded my home and I'm
> going to beat you up.  There's no evidence of that, none whatsoever.

Tr. III at 404.  The record demonstrates that Petitioner did in fact have an opportunity to

address the jury on the prosecution's theory of the case, and did so.  Further, as the OCCA

noted, the Prosecutor's comment was not contrary to the evidence.  The Prosecutor's

comment, therefore, did not deprive Petitioner of a fair trial.

Second, the Prosecutor's comment that he had a responsibility to "speak for the dead"

was brief and unelaborated.  Although the comment may have been an inappropriate appeal

to the jury's sympathy, when viewed in the context of the entire trial the comment could not

plausibly have tipped the scales in the prosecution's favor, thus depriving Petitioner of a fair

trial.  *See Fero v. Kerby*, 39 F.3d at 1475.

In sum, the OCCA's adjudication of Petitioner's claims of prosecutorial misconduct did not result in a decision that is either contrary to, or an unreasonable application of Supreme Court law, nor is the OCCA's decision an unreasonable determination of the facts.

The OCCA did not address Petitioner's "cumulative error" claim.  Nevertheless, relief on this ground should be denied.

"A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."  *United States v. Oberle*, 136 F.3d 1414, 1423 (10th Cir. 1998).  To be considered cumulatively, each error must involve a violation of the federal constitution rather than state law.  *See Parker v. Scott*, 394 F.3d 1302, 1327 (10th Cir. 2005) ("Because we find no single constitutional error, we also must reject Parker's argument that cumulative error resulted."); *Hain v. Gibson*, 287 F.3d 1224, 1244 (10th Cir. 2002) ("Although Hain has asserted a cumulative error argument, it is without merit since he has failed to identify multiple constitutional violations arising at trial.") (citation omitted)); *Neill v. Gibson*, 278 F.3d 1044, 1063 (10th Cir. 2001) ("Because there was no constitutional error, Neill has also failed to establish any cumulative error warranting habeas relief.") (citations omitted).  "'Cumulative-error analysis applies where there are two or more actual errors.  It does not apply, however, to the cumulative effect of non-errors.'"  *Moore v. Gibson*, 195 F.3d 1152, 1175 (10th Cir. 1999) (citation omitted).  Because there are no constitutional errors in this

case, there is nothing to consider cumulatively.  Petitioner's claim of cumulative error provides not basis for federal habeas corpus relief.

### RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] be denied.

### NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by August  8th , 2005.  *See* Local Civil Rule 72.1.  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

### STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred by the District Judge in this matter and terminates the referral.

DATED this  19th  day of July, 2005.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE